IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSEPH NEAL JONES, #2036232 | § | |
| VS. | § | CIVIL ACTION NO. 6:19cv206 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE

Petitioner Joseph Neal Jones, a prisoner confined at the Michael Unit within the Texas Department of Criminal Justice (TDCJ) proceeding *pro se*, filed this federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2015 judgment of conviction from Smith County, Texas. The petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the petition.

For reasons explained below, the Court recommends that Jones's petition be denied, the case be dismissed with prejudice, and that he be denied a certificate of appealability *sua sponte*.

**I. Procedural History**

On October 15, 2015, after a jury trial, Jones was sentenced to thirty years' imprisonment for one count of aggravated robbery, with an affirmative finding that he possessed a firearm, (Dkt. #17, pg. id. #2913). Jones filed a direct appeal, and the Twelfth Court of Appeals affirmed the conviction in a written opinion. *See Jones v. State*, 2016 WL 4379498 (Tex. App.—Tyler, Aug. 17, 2016, pet. ref'd). The Texas Court of Criminal Appeals subsequently denied his petition for discretionary review on April 5, 2017. On September 20, 2017, Jones filed a state habeas application—which was denied on January 30, 2019, without a written order on the findings of the

1

trial court without a hearing. Jones then filed this timely federal habeas petition on April 25, 2019,

(Dkt. #1).

## II. Factual Background

The appellate court described the facts of Jones's case as follows:

On the evening of September 11, 2014, Stanley Williams and some of his friends went from Mineola to Tyler. Williams went to a house to meet Tonya Phillips to smoke marijuana. After they smoked, Phillips tased Williams. Then someone held a gun to Williams's head, took money from his wallet, and attempted to bind him with duct tape. Williams broke free and struck the other person. The gun fell to the ground, and Phillips picked it up and shot Williams in the leg. Williams managed to escape, and his friends, who were waiting in a car in the driveway, took him to a nearby hospital for treatment.

Appellant was interviewed by police following the incident. After the police interviewed Williams and other witnesses and gathered evidence from the scene, they arrested Appellant. He was indicted for aggravated robbery, and the cause proceeded to a jury trial. The jury found Appellant guilty as charged and assessed punishment at imprisonment for thirty years and a $10,000 fine. This appeal followed.

*Jones*, 2016 WL 4379498 at *1.

## III. Jones's Federal Habeas Petition, Respondent's Answer, and Jones's Reply

Jones raises five claims for relief. Specifically, he maintains that trial counsel was ineffective for (1) abandoning a previously-filed motion to suppress, (2) failing to investigate police reports and discovery materials, (3) failing to investigate a constitutional error concerning a juror, and (4) failing adequately investigate juror misconduct. He also asserts that he is actually innocent. Jones seeks an evidentiary hearing and that his petition be granted.

The respondent has been ordered to file an answer and has done so, (Dkt. #10). Respondent insists that Jones's claims of ineffective assistance of counsel are without merit. Finally, Respondent argues that Jones's claim of actual innocence is not cognizable in federal court.

Jones has filed a response to Respondent's answer, (Dkt. #15). There, he repeats all of his habeas claims. He further insists that his claim of actual innocence is cognizable in federal court—contrary to the Respondent's assertion.

## IV. Legal Standards

### 1. Federal Habeas Review

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under the AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). The AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the

3

doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the highly deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

### 2. Ineffective Assistance of Counsel

To show that trial counsel was ineffective, Jones must demonstrate both deficient performance and ensuing prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). In evaluating whether an attorney's conduct was deficient, the question becomes whether the attorney's conduct fell below an objective standard of reasonableness based on "prevailing norms of practice." *See Loden v. McCarty*, 778 F.3d 484, 494 (5th Cir. 2016).

Moreover, to establish prejudice, the petitioner must show that there is a reasonable probability that—absent counsel's deficient performance—the outcome or result of the proceedings would have been different. *Id.*; *see also Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687)). It is well-settled that a "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Strickland*, 466 U.S. at 694. Importantly, the petitioner alleging ineffective assistance must show both deficient performance and prejudice. *See Charles v. Stephens*, 736 F.3d 380, 388 (5th Cir. 2013) ("A failure to establish either element is fatal to a petitioner's claim.") (internal citation omitted). Given the already highly deferential standard under the AEDPA, establishing a state court's application

4

whether counsel was ineffective "is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *see also Charles*, 736 F.3d at 389 ("Both the *Strickland* standard and the AEDPA standard are highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotations and citation omitted).

## V. Discussion and Analysis

*1. Abandoning Motion to Suppress and Failing to Investigate* (Grounds One and Two)

In his first claim, Jones argues that counsel was ineffective for allegedly abandoning a previously-filed motion to suppress concerning a search of his cellphone that revealed text messages. He further asserts that police unlawfully (1) searched and seized his vehicle without a warrant or probable cause, (2) searched his vehicle pursuant to warrant stemming from illegally obtained evidence, (3) searched his cellphone before obtaining a proper warrant, and (4) searched is cellphone stemming from an affidavit containing illegally obtained evidence.

Moreover, in his second claim, Jones contends that trial counsel was ineffective for failing to "investigate policy reports and affidavits[,] which caused [trial counsel] to make an uninformed decision to abandon the previously filed motion to suppress evidence obtained from an unlawful [search] and seizure of Petitioner and his property."

Jones argued that trial counsel was ineffective for abandoning the motion to suppress in his state habeas application. As mentioned, the Texas Court of Criminal Appeals ultimately denied the habeas application on the findings of the state habeas court. Jones's trial counsel, Mr. Ladd, filed an affidavit in response to Jones's state habeas petition on January 15, 2015. He responded directly to this claim as follows:

a. Allegation—Mr. Ladd abandoned the previously-filed Motion to Suppress

Defendant Jones has retained prior counsel prior to the appointment of Mr. Ladd. The prior counsel filed a Motion to Suppress the text[] messages claiming an unauthorized search by

law enforcement. I was able to review the discovery and determine that in fact the search was lawful under Texas law. This was explained to Mr. Jones in detail prior to the hearing and he had full knowledge of our position, and that the motion would be withdrawn. This was not a surprise to Mr. Jones as he was informed of our defense strategy in this case. Because I did not believe there was any merit in the Motion, we agreed to withdraw the Motion in an effort to prevent the argument of meritless motions before the Court. It was explained to Mr. Jones why there was a difference in my opinion due to my review of the discovery as opposed to his original counsel. In addition, I did not have substantive evidence of a Fourth Amendment violation and I disagree that the motion was "undeniably meritorious." I did not discover an illegal search and seizure conducted in this case. In addition, Mr. Jones claims that if these messages were excluded, there would be "reasonable probability the outcome of the proceedings would be different." His argument is silent as to the videos of him purchasing the phones prior to the commission of the crime, him being located at the scene of the crime by law enforcement, and the most difficult hurdle, the victim's DNA being located on Mr. Jones.

Dkt. #17, pg. id. #3087. Mr. Ladd then directly responded to the second claim, which relates back to Jones's first claim:

a. Allegation—Mr. Ladd failed to investigate the previously filed Motion to Suppress

Denied—Due to the fact that this ground is essentially the same claim as Ground 1, I will rely upon my statement above. In addition, Mr. Jones and I had several meetings in my office to review all of the evidence in this case. To say that I failed to adequately investigate the facts of the case to support the Motion to Suppress is simply wrong. The flaw in Mr. Jones['] argument is that the decision was only based on the facts of his case. The mutually agreed decision to withdraw the motion was not only based upon the facts in his case, but current Texas law as well. Facts alone do not make the decisions in cases. Facts must be analyzed with Texas law in order to make the appropriate decision. That was done in this case. All documents, videos and facts were reviewed in this case.

*Id*. at pg. id. #3088.

The state habeas court entered findings of fact and conclusions of law concerning both of these claims. Those findings and conclusions are entitled to a presumption of correctness on federal habeas review and the petitioner has the burden of overcoming this presumption. *See Carter v. Collins*, 918 F.2d 1198, 1202 (5th Cir. 1990).

28 U.S.C. § 2254(e)(1) provides the following:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made

by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Under this statute, then, only one avenue exists in which a federal court can ignore state fact findings: When the petitioner rebuts the presumption of correctness by clear and convincing evidence. The presumption of correctness is especially strong when the state habeas court, as in Jones's case, and the trial court "are one in the same." *See Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000); *see also Mason v. Davis*, 2019 WL 11854771, at *1 (5th Cir. 2019) (unpublished) ("Where, as here, 'the state habeas court and the trial court are one in the same,' '[t]he presumption is especially strong.'") (citing *Clark*, 202 F.3d at 764).

Because the court denied relief on the merits of Jones's claims, he is bound by section 2254 and must show that the state court's adjudication of his claims resulted in a decision which was contrary to or involved an unreasonable application of clearly established federal law—as established by the Supreme Court, or resulted in a decision based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See Rivera v. Quarterman*, 505 F.3d 349, 356 (5th Cir. 2007).

Here, the state habeas court entered the following findings and conclusions of law with respect to these claims:

### GROUNDS ONE and TWO

In Applicant's first and second ground for relief, he alleges that he received ineffective assistance of counsel when his appointed trial counsel failed to investigate and subsequently abandoned a motion to suppress that had been previously filed by the retained attorney who initially represented him.

. . .

Police searched the contents of Applicant's phone pursuant to a lawful search warrant. If applicant's trial counsel had not abandoned the motion to suppress, the Court would have properly denied the motion.

7

> Trial counsel's decision to abandon the motion to suppress was not ineffective assistance of counsel. Applicant's first and second grounds are without merit and should be overruled.

*Id.* at pg. id. #3097-98. Jones argues that the state court's findings ignore the warrant requirement of the Fourth Amendment, (Dkt. #1, pg. 15). Specifically, Jones contends that "the particularity requirement because the affidavit did not specify the electronic data sought or describe the data or even mention the cellphone as probable cause in the affidavit." *Id.*

The United States Constitution states that a warrant should not issue without "particularly describing" what is to be seized. U.S. CONST. amend. IV. "A warrant's particularity is sufficient if a reasonable officer would know what items he is permitted to seize," and the warrant does not require "all items authorized to be taken" to be specifically identified. *United States v. Fulton*, 928 F.3d 429, 434 (5th Cir. 2019) (citing *United States v. Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011)). The place to be searched and the items to be seized must be described with particularity such that an officer has no discretion to decide what may be seized. *See United States v.* Triplett, 684 F.3d 500, 505 (5th Cir. 2012); *United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010); *see also Williams v. Kunze*, 806 F.2d 594, 598 (5th Cir. 1986) ("The items to be seized must be described with sufficient particularity such that the executing officer is left with no discretion to decide what may be seized."). In this way, the particularity requirement leaves no room for "general searches." *See United States v. Christine*, 687 F.2d 749, 752 (3d Cir. 1982) ("The particularity requirement 'makes general searches … impossible.'") (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). When reviewing challenges to the particularity requirement, courts examine the warrant as a whole—including any accompanying affidavit and/or attachments. *Aguirre*, 664 F.3d at 614.

The United States Supreme Court explained that a person enjoys heightened privacy interests in cellphone searches. *See Riley v. California*, 573 U.S. 373, 403 (2012). In *Riley*, the

Court stated that "it is no exaggeration to say that many of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives." *Id*. at 395. Given that modern cellphones contain immense storage capacity and can be characterized as minicomputers, a "cell phone search would typically expose to the government far more than the most exhaustive search of a house." *Id*. at 396-97; *see also United States v. Oglespy*, 2019 WL 1877228, at *5 (S.D. Tex. Apr. 26, 2019) (finding that "the protections given to a cell phone must be at least equal to, if not greater than, the protection set out for houses.").

Here, however, Jones failed to demonstrate that the state habeas court's findings—that police officers searched his cell phone lawfully—were unreasonable or contrary to the Constitution. A review of the entire record demonstrates that the search warrants for both Jones's truck and cellphone, contrary to his contentions, were constitutional. As Respondent notes, the police obtained search warrants for Jones's truck and his cellphone, (Dkt. #17, pg. id. #3163-69).

Because a Fourth Amendment analysis is fact-specific, a brief recitation of the facts is necessary. On September 11, 2014, Officer Layne was dispatched to an address on Chilton Avenue in Tyler, Texas, on a suspicious-noise gunshot call. Dispatch informed Officer Layne that the address was an apartment, and subsequently located apartment three and four behind the main house. Officer Layne contacted Mr. Simmons, who explained that he had heard "breaking glass and possibly a gunshot from the upstairs apartment." Simmons explained that he and his wife were asleep and were awakened by noise from upstairs, heard a scuffle, then breaking glass followed by a gunshot. Simmons also heard one vehicle drive away, and advised that two black males lived in the apartment and both males drive similar blue trucks—believing one was a Chevrolet and one was a GMC.

Officer Layne reported that he saw broken glass on the ground that had come from the second-story window and the screen was damaged. The front door was open and "officers prepared to clear the residence." When the door was opened fully, "a considerable amount of blood was observed on the floor, stairs and the wall." Police then stated their presence, but there was no reply. Police then began proceeding up the stairs; police observed an empty shell casing on the floor and "a set of keys on a blue lanyard lying in the hall between the dining table and the stairwell," along with a Nike basketball shoe near it. Once police realized there was not a victim inside the residence, they left and began to gather information. Officer Layne remained on the scene and Jones arrived. Officer Layne "used the keys on the lanyard to check both and Lydia's [another resident] vehicles to see if they worked. There was a GM key on the lanyard and it unlocked Jones['s] vehicle. I later returned the keys to Officer Williams."

On September 11, 2014, police obtained a search warrant for Jones's Chevrolet pickup truck. The warrant provided that police could seize, among other things, "cellular telephones, "cellular telephone accessories, "charging devices," and allowed police to conduct a "forensic examination of any electronic device or media that is seized," (Dkt. #17, pg. id. #3163). A few days later, on September 15, 2014, police obtained a search warrant issued to Verizon Wireless for information and records on Jones's cell phone. Among several items authorized by the search warrant, the warrant authorized the search of his details of his calls, text messages, voice messages, email messages, photographs, and videos captured between September 1, 2014, through September 15, 2014, (Dkt. #17, pg. id. #3166).

These search warrants reveal that the initial September 11, 2014, warrant authorized police to search Jones's pickup truck for cell phones and to conduct a "forensic examination of any electronic device or media that is seized." Contrary to Jones's contentions, police obtained a search

warrant for his truck that specifically authorized police to search any cellphone and conduct an examination of it.

The record further shows that the search of Jones's vehicle occurred on September 12, 2014, wherein a "black Samsung cellular phone was recovered inside[] that showed telephone number [redacted]" and revealed communication with Tonya Phillips, the other perpetrator in the aggravated robbery, "during the incident." Specifically, "[t]here were several text messages that showed where Tonya Phillips and Joseph Jones were planning on committing the Aggravated Robbery." *Id.* at pg. id. # 3168. As a result, police then sought a search warrant on September 14, 2014, for Verizon Wireless for information/records on Jones's phone. Accordingly, contrary to Jones's contentions, police obtained a search warrant for his truck—which allowed police to seize and search his phone, which revealed text messages with the other perpetrator relevant to the crime—prompting police to seek a search warrant for Verizon Wireless for information and records on Jones's phone.

Jones's argument that the cell phone failed to comply with the requirements of the Fourth Amendment's particularity requirement is without merit. The initial warrant authorized police to search Jones's truck for cellphones inside—and then conduct a "forensic investigation" of that phone(s). Indeed, upon searching Jones's truck, police discovered a cellphone and lawfully searched it—leading to the securing of the second warrant to Verizon Wireless for records. Both warrants were specific as to inform police what items could be searched/seized. The warrant for Jones's cellphone specifically provided that police could only search for items captured on Jones's phone from September 1, 2014, through September 15, 2014—thereby forbidding police from conducting a "generalized search" that would run afoul the Fourth Amendment.

Accordingly, Jones fails to show, through a preponderance of the evidence, that the state habeas court's rejection of his claim(s) were unreasonable in light of the Fourth Amendment's particularity requirement. Similarly, for all his claims surrounding the abandoned motion-to-suppress, Jones has not shown by a preponderance of the evidence that the state habeas court's rejection of his claims was unreasonable or contrary to federal law. *Strickland* requires that Jones demonstrate both deficient performance and ensuing prejudice; here, he shows neither. He has failed to show that counsel performed deficiently in "abandoning" the motion to suppress—particularly given how the state habeas court, who also presided over the jury trial, ruled that she would have denied the motion to suppress had it not been "abandoned."

Furthermore, Jones cannot demonstrate ensuing prejudice. While Jones repeats his claims that his truck and cellphone were unlawfully searched and seized, he omits other portions of the record. For example, the record demonstrates—and counsel explained in in his affidavit to the state habeas court—that the victim's blood was found on the shirt Jones's was wearing the day he was arrested, (Dkt. #17-16, pg. 119-21) (trial transcript). Because the victim's blood was found on Jones's shirt, Jones cannot show that had counsel not abandoned the motion to suppress, the result of the trial would have been different. In this way, he cannot demonstrate prejudice and all of his claims that counsel was ineffective for "abandoning" a motion to suppress should be dismissed.

In his memorandum of law and reply, Jones argues that his interrogation—wherein police obtained incriminating statements and his shirt with the victim's blood on it—violated his constitutional rights because he was not given *Miranda* warnings. He contends that police denied his request to leave and "essentially placed him in custody," (Dkt. #15, pg. 10) (Jones's reply). As a result, counsel was ineffective for failing to file a motion to suppress the evidence obtained from the questioning based on *Miranda*.

*Miranda* warnings must be administered prior to a "custodial interrogation." *See United States v. Bengiyenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc) (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). For *Miranda* purposes, a suspect is considered "in custody" when placed under formal arrest of when a reasonable person in the suspect's position "would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id*. at 596.

In other words, the basic test is one that involves the totality of the circumstances, and the Fifth Circuit has stated that "[i]n general, we have held that custodial interrogation requires some combination of isolation, restriction of movement, physical restraint, and coercive technique." *United States v. Salinas*, 543 F. App'x 458, 463 (5th Cir. 2013) (unpublished). Some factors in determining whether a suspect is in custody include: (1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical movement, and (5) statements made by officers regarding the individual's freedom to move or leave. *See United States v. Wright*, 777 F.3d 769, 775 (5th Cir. 2015).

Jones raised this *Miranda*-claim in his state habeas application. Mr. Ladd, trial counsel, responded to this claim in his affidavit, as follows:

> Mr. Jones gave a lengthy interview to detectives on the night in question. This interview did not violate *Miranda*. While reviewing the interview it certainly did not assist Mr. Jones to keep talking without Counsel, but that was his decision. Mr. Jones knew that he did not have to keep talking to the Detectives (as evidenced by the Writ claiming he wished to terminate the interview), but Mr. Jones continued to try and talk his way out of the incident that night. Unfortunately for Mr. Jones, those statements were statements against his interest[,] and they were admissible. Counsel sought suppression and made objection on issues at Mr. Jones's trial that were based on Texas law.

Dkt. #17, pg. id. #3090. In rejecting Jones's claim that trial counsel was ineffective for failing to file a motion to suppress on this issue, the state habeas court found that:

13

Applicant was uncuffed at the time he made his statements and had been informed that he was free to leave. Additionally, police had returned his house keys to him and offered him a ride home.

Applicant's rights under Miranda were not violated, so his trial counsel did not have a valid legal basis to file a motion to suppress his client's incriminating statements.

*Id*. at pg. id. #3103.

Here, on federal habeas review, Jones failed to demonstrate that the state habeas court's adjudication of this claim was unreasonable or contrary to federal law. The record contains the police narrative regarding Jones's interview, which occurred on September 11, 2014, and reads as follows:

Shortly after I left the scene Sgt. Balderas pulled over a vehicle that matched a possible suspect vehicle so I responded to his location to assist. The driver of the vehicle was identified as Joseph Jones. Jones advised that he had come to the residence because a friend of his that lived there, Jamie Lydia, had called him and told him the police [were] in front of his house. He advised Lydia told him he was at work and asked him to go by the residence to see what was going on. Jones advised he had lived at the residence but had moved out about a month ago and now lives on S. Clayton. Sgt. Balderas asked Jones if he knew a female named Tonya Phillips and he advised no. Sgt. Balderas talked to detectives and then told me to transport Jones to the PD so the detectives could interview him. I transported Jones uncuffed to the police department and had him wait in an interview room. Detective Gardner arrived and spoke with Jones. I waited until they were finished and then I transported Jones back to S. Chilton. Jones agreed to allow Det. Williams to perform a GSR test on his hands. Jones was told he could leave but his vehicle was going to be impounded and a detective would contact him later. I offered to give Jones a ride to his residence but he refused. Jones asked if he could have his house keys out of his vehicle. He advised the keys were in the drivers seat and gave me permission to get the keys out of the vehicle. I gave the keys to Jones and he walked away from the area. I stayed at the scene until I was relieved.

(Dkt. #17, pg. id. #3093).

The police narrative, Mr. Ladd in his affidavit, and the state habeas court found that Jones was uncuffed during his interview, was offered a ride home, and given the keys to his vehicle. A reasonable person in Jones's situation would understand that being offered a ride home meant that he was free to leave. Moreover, Jones's claim that police denied his request to leave is nothing

14

other than a self-serving and conclusory allegation, which does not show a constitutional violation. *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (explaining that mere "conclusory allegations do not raise a constitutional issue in a habeas proceeding."). In these ways, Jones failed to show that the state court's adjudication of this claim was unreasonable or contrary to law; this claim should be dismissed.

### 2. Questioning a Juror

Next, Jones maintains that trial counsel was ineffective for failing to investigate a constitutional error—namely, the failure to question a juror who witnessed him being escorted by deputies during a break in trial. Jones explains that during a trial break, a juror witnessed him being escorted to the restroom by two deputies and the court's bailiffs. Trial counsel then moved for a mistrial, which was denied. Jones insists that counsel should have questioned the juror to assess prejudice; when counsel failed to question the juror, "the court was left to speculate in its harm analysis rendering the trial fundamentally unfair," (Dkt. #1, pg. 18). Had counsel questioned the juror, "the court would not have made an arbitrary decision to deny the mistrial." *Id*.

Jones raised this claim both on direct appeal and in his state habeas application. The appellate court rejected the claim, reasoning that Jones was not prejudiced by the juror seeing him in custody. Specifically, the court determined as follows:

> In this case, neither handcuffs nor shackles were used to restrain Appellant. Instead, Appellant was secured at all times during the trial by an ankle monitor that was covered by his pant leg. This made him appear unrestrained. During one of the breaks in the trial, three deputy sheriffs escorted Appellant to the restroom in court's chambers. The deputies walked with Appellant but did not visibly restrain him or touch him. As Appellant walked through the court's chambers, one of the jurors walked down the hallway past a window through which he could see inside the chambers. Appellant told the deputies that there was someone in the hallway, and the deputies cleared the hallway before allowing Appellant to continue to the restroom. Deputy Mass, the bailiff, testified that the juror had his head down and was texting on his phone. The deputy further testified that she did not see Appellant and the juror make eye contact. However, she was not sure whether she would have been able to see it from where she was standing.

Appellant testified that he made eye contact with the juror for three seconds at most. He testified further that the window allowed the jury to view him from only the chest up. Therefore, even if the juror recognized Appellant and the ankle monitor had been uncovered, the juror could not have detected that Appellant was wearing it. Furthermore, the juror did not testify. As a result, the record does not show that the juror was aware that Appellant was restrained when he saw Appellant through the window. And there is no evidence that the juror discussed whatever he saw with the other jurors or that if affected his decision on guilt. *See* **Clark v. State**, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986). Therefore, Appellant has failed to demonstrate he was prejudiced by the juror's seeing him in custody.

*See Jones*, 2016 WL 4379498, at \*3. Trial counsel also directly responded to this claim during Jones's state habeas proceedings. Specifically, trial counsel presented the following:

Denied—this was investigated and evidence was brought before the Court concerning whether or not a juror saw Mr. Jones being escorted to the restroom by law enforcement. This was brought before the Court and a mistrial was sought and subsequently denied. Mr. Jones is simply complaining of the way in which the mistrial was sought, not that one was not requested. As such, Counsel presented this issue before the Court in such a manner as to obtain a ruling.

Dkt. #17, pg. id. #3046.  Moreover, the state habeas court—in denying Jones's application— entered findings of fact and conclusions of law regarding this issue:

In his seventh ground, Applicant alleges that he received ineffective assistance of counsel based on his trial counsel's failure to secure a mistrial after jurors saw him in custody. (Writ Appl. at Ground 7.)

. . .

The incident in question involved jurors seeing deputies escorting Applicant to the restroom. The incident did not affect Applicant's right to a fair trial, because the deputies did not hold or touch Applicant; he was not handcuffed; and his leg monitor was hidden by his pants. (7 R.R. at 242-243); (10 R.R. at 98-99). In fact, there is no evidence that the juror realized that Jones was in custody. *Id*. at 97.

Applicant's presumption of innocence was not violated, and he has failed to demonstrate that he received ineffective assistance of counsel based on the failure to obtain a mistrial. His seventh ground is without merit and should be overruled.

*Id*. at pg. id. #3101.

Here, on federal habeas review, Jones failed to demonstrate that the state court's adjudication(s) of this claim was unreasonable or contrary to federal law. He also failed to demonstrate prejudice under *Strickland*. The presumption of innocence is a basic and fundamental component of a fair trial under our criminal justice system. *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *see also Chavez v. Cockrell*, 310 F.3d 805, 808 (5th Cir. 2002) ("The physical appearance of a defendant while in the presence of the jury *may* adversely affect the presumption of innocence.") (emphasis supplied). Indeed, "[i]f a court erroneously shackles a defendant the jury receives a powerful image contradicting the presumption of innocence." *Hatten v. Quarterman*, 570 F.3d 595, 603 (5th Cir. 2003).

There is no basis for federal habeas relief, however, if "none of the proceedings at which petitioner was shackled were before the jury." *Passman v. Blackburn*, 652 F.2d 559, 568 (5th Cir. 1981). On collateral review, a federal court will grant habeas relief only when the use of restraints "had a substantial and injurious effect or influence in determining the jury's verdict." *Hatten*, 570 F.3d at 604. The Fifth Circuit has long held that "[a] brief and fortuitous encounter of the defendant in handcuffs by jurors is not prejudicial and requires an affirmative showing of prejudice by the defendant." *Wright v. Texas*, 533 F.2d 185, 187 (5th Cir. 1976); *United States v. Diecidue*, 603 F.2d 535, 549 (5th Cir. 1979) ("This Court has declared, however, that brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice."); *White v. Johnson*, 111 F.3d 892, 1997 WL 156829, at *8 (5th Cir 1997) (unpublished) ("A defendant is not necessarily prejudiced by a brief or incidental viewing by the jury of the defendants in handcuffs."). Contrary to Jones's specific contention, it is his burden to demonstrate he was prejudiced. *See United States v. Turner*, 674 F.3d 420, 435 (5th Cir. 2012) (explaining that defendants bear the burden of

17

affirmatively demonstrate prejudice, which the Court explains it refuses "to infer from isolated incidents.") (internal citation omitted).

Here, the record shows that Jones—at most—had a brief, fortuitous encounter with a juror. But he was not handcuffed, deputies were not touching him, and his ankle monitor was not visible. Importantly, there is no evidence that the juror in question even realized he saw Jones—as the juror was walking with his head down texting. Jones failed to affirmatively show that he was prejudiced by seeing one juror while being escorted by the deputies to the restroom.

The record reflects that trial counsel moved for a mistrial based on Jones's witnessing a juror. The trial court denied the motion—further demonstrating that Jones failed to affirmatively show prejudice. While Jones states that he was prejudiced by counsel's failure to "investigate" the juror or call the juror as a witness, his claim is purely speculative because there is no indication what the juror would have testified to. *See Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (explaining that in order to show that counsel was ineffective for failing to investigate, the petitioner must allege—with specificity—what the investigation would have revealed and how it would have changed the outcome of the trial."); *see also Bucklew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified to are largely speculative."). Jones's speculative claim of prejudice—that had trial counsel called the juror, the trial court would not be forced "to speculate it's harm analysis"—falls short of demonstrating prejudice. This claim should be dismissed.

### 3. Alleged Juror Misconduct

Jones further maintains that counsel was ineffective for failing to investigate juror misconduct. He explains that during a break from trial, a juror was visibly speaking with Detective

Matthews—one the of the state's witnesses. A witness observed the juror and Detective Matthews shaking hands. Counsel moved for a mistrial, and began questioning Detective Matthews "but neglected to question the juror accused of the misconduct." Jones states that Detective Matthews testified that he did not recall shaking hands with the juror, which illustrates that Detective Matthews believes "lying is a part of his job," and shows that counsel was ineffective for failing to also question the juror.

On direct appeal, the appellate court found that the trial court did not abuse its discretion in denying the motion for mistrial because the conversion did not involve Jones's case. Specifically, the Court reasoned as follows:

> The trial court instructed the jurors not to have any contact with any of the witnesses except for "casual greetings." Appellant's attorney was informed by Appellant's mother that a juror approached Detective Dennis Matthews in the hallway after he finished testifying. Appellant's counsel informed the court that the juror thanked the detective for his service, Detective Matthews said "thank you," the two shook hands, and the juror walked away. Detective Matthews testified that a juror walked by him and said "thank you for your service." He further testified that he said "thank you" in return and walked away from the juror. Detective Matthews did not recall shaking the juror's hand.

> The record shows that the conversation between Detective Matthews and the juror did not concern the specific case a trial. *See* **id**. Therefore, the trial court did not abuse its discretion in denying the motion for mistrial on the ground that a juror spoke with a witness.

Dkt. #17, pg. id. #170. Additionally, trial counsel responded to this claim in his affidavit:

> Denied—This incident was brought to our attention at trial and a hearing was held outside of the presence of the jury and Detective Matthews was examined by Counsel for Mr. Jones. After the testimony of Detective Matthews, it was clear that no juror misconduct had occurred and as such the trial resumed. It was investigated and a hearing was held on this issue.

Dkt. #17, pg. id. #3090. The state habeas entered findings of fact on this claim, finding that Jones failed to show that counsel was ineffective:

> The incident in question involved a juror approaching a witness, Detective Matthews, to shake his hand and thank him for his service. (11 R.R. at 67-68).

The Court properly denied the motion for a mistrial because the exchange between a juror and a witness as brief and the communication did not pertain to Applicant's case. *Romo v. State*, 631 S.W.2d 504, 506 (Tex. Crim. App. 1982).

Applicant's trial counsel's decision not to question the witness was reasonable because there was already clear testimony about the conversation between a juror and a witness.

Applicant was not denied his right to a fair trial, and he has not shown that his trial counsel's performance was deficient.

*Id*. at pg. id. #3102.

Here, Jones failed to demonstrate prejudice. As explained above, a defendant who alleges that counsel failed to investigate must allege, with specificity, what the investigation would have revealed and how it would have altered the outcome of the trial. *See Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). Jones wholly fails to clear these hurdles. He again argues that the failure to investigate left the court "to speculate its harm analysis" and states that it would have been "reasonable" for counsel to investigate the juror's recollection of the event.

While Jones takes issue with the trial court's alleged "speculation," Jones is speculating himself by implying that had counsel "investigated" the juror's recollection, it would have been favorable to him. The bottom line is that both the appellate court and the trial court found that the conversation between the juror and Detective Matthews was not case-specific and concerned only thanking Detective Matthews for his service—which can be characterized as a permissible "casual greeting." Jones has not shown that counsel was ineffective for failing to "investigate the juror" let alone shown that he was prejudiced. This claim should be dismissed.

*4. Actual Innocence*

In his final claim, Jones argues that he is actually innocent and possesses new evidence to support his innocence. Specifically, he states that in an affidavit from Tonya Phillips, the other perpetrator and necessarily an eyewitness, Phillips declared that Jones was not the assailant and

provided exculpatory evidence—Facebook messages between her and the victim wherein the victim identifies his assailant as Delorean Givens. Jones insists that if the messages were presented at trial, there is a reasonable probability that he would have been acquitted.

Jones raised this claim in his state habeas application. Trial counsel responded to the claim as follows, implying that Jones cannot show prejudice:

> While "new evidence" might be outside the scope of my response, I will respond out of an abundance of caution as to not concede this particular point. The "new" affidavit of Tonya Phillips allegedly sets forth nee text messages and again claims the innocence of Mr. Jones. Mr. Jones has repeatedly maintained that he was not there that evening. To the extent that the "new evidence" was evidence already obtained by Ms. Phillips in her affidavit that was discussed above, there are many questions that remain. Mr. Jones makes the statement at the end of each of his grounds that the jury would have come to a different answer if in fact these grounds were proven to be true. However there appears to be no mention of his purchasing the phones that were used for these text messages at Wal-Mart. In fact, the video surveillance shows him purchasing these phones while he is texting on his phone in the checkout line. Furthermore, the Writ is silent as to why he was driving by the scene of the crime during the early morning hours when the police were responding to the call, and why his shoe (which was seen in the Wal-Mart video) was found at the scene. These factors were taken into consideration by the jury as well in reaching their verdict.

Dkt. #17, pg. id. #3047. In rejecting this claim, the state habeas court articulated the following:

> The victim in Appellant's case testified during the trial on the merits that Delorean Givens committed the crime and that he did not recognize Applicant. Therefore, the victim's Facebook text messages would not have provided the jury with any new information.

*Id*. at pg. id. #3104.

As respondent indicates, however, claims of actual innocence are not cognizable on federal habeas review. *See Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) ("The Fifth Circuit has rejected this possibility and held that claims of actual innocence are not cognizable on federal habeas review."); *White v. Thaler*, 522 F. App'x 226, 231 (5th Cir. 2013) (unpublished) (same); *Loya v. NFN Underwood*, 857 F. App'x 834, 835 (5th Cir. 2021) (Mem) (unpublished) ("Finally, to the extent that Loya attempts to raise a stand-alone innocence claim, this court does not recognize freestanding claims of actual innocence on federal review; an allegation of actual

21

innocence does not by itself establish a constitutional violation."). Jones's claim should be dismissed.

To the extent that Jones attempts to couch this claim as one of ineffective assistance of counsel, such claim fails. Jones has not shown that the state habeas court's adjudication of this claim was unreasonable or contrary to federal law. The record shows that the jury heard testimony that the victim did not recognize Jones and believed Delorean Givens was the perpetrator; nonetheless, the jury rejected the claim and convicted Jones. Accordingly, Jones failed to demonstrate that the outcome would have been any different had these alleged "new" messages been presented to the jury.

## VI. Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA") from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution

of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Jones failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability regarding his habeas claims.

<u>RECOMMENDATION</u>

Accordingly, it is recommended that Petitioner Jones's federal habeas corpus petition be denied and that the case be dismissed, with prejudice. It is further recommended that Jones be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and

23

recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

So ORDERED and SIGNED this 9th day of May, 2022.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE